J-S55013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFERY ALLEN NORCROSS | : | |
| | : | |
| Appellant | : | No. 572 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 27, 2018
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0001501-2017

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  March 10, 2021**

Jeffrey Allen Norcross appeals *nunc pro tunc* from his November 27, 2018 judgment of sentence, which was entered after a jury found him guilty of rape of a child, involuntary deviate sexual intercourse ("IDSI"), aggravated indecent assault, corruption of minors, and indecent assault.  We affirm.

The trial court has authored an apt summary of the factual circumstances that stem from an investigation carried out by the Pennsylvania State Police ("PSP"), wherein three victims, C.B., T.M.C., and T.B., reported being sexually abused by Appellant:

> On April 26, 2017, PSP received a ChildLine referral from Mercer County Children and Youth Services indicating that a student at Grove City Middle School had been sexually abused by her step-father[, Appellant].  PSP Officer Tyler Craig ("Officer Craig")[,] arrived at Grove City Middle School and interviewed minor victim C.B.[, who] disclosed to Officer Craig that she had been sexually

---

[*] Retired Senior Judge assigned to the Superior Court.

abused by Appellant over a time period lasting several years. C.B. stated that the sexual abuse started when she was eight (8) years old. The sexual abuse included vaginal penetration by the penis of Appellant as well as an episode where Appellant forced C.B. to perform oral sex on Appellant.

Additionally, two (2) more victims, T.M.C. and T.B., reported to PSP that Appellant had sexually abused them. T.M.C. revealed an incident that had occurred when she was living at the residence of Appellant. [He] had squirted chocolate syrup all over T.M.C. In order to rinse the chocolate syrup off, T.M.C. took a shower. While T.M.C. was in the shower, Appellant entered the bathroom and penetrated T.M.C.'s vagina with his finger. T.B. also disclosed an incident that had occurred when she was living at the residence of Appellant. T.B. was asleep when she awoke to Appellant touching her vagina.

\*     \*     \*

C.B. testified that Appellant stopped sexually abusing her when she was twelve (12) years old. Moreover, C.B. testified that Appellant had stuck his penis into her vagina more than ten (10) times.

\*     \*     \*

T.M.C. was friends with T.B. and lived primarily at Appellant's residence as a teenager. T.M.C. testified that she observed Appellant smack T.B.'s butt and that Appellant would frequently smack her butt too. T.M.C. testified that Appellant started smacking her butt when she was fourteen (14) years old.

T.M.C. testified that she was drinking one night with Appellant. [He] proceeded to squirt chocolate syrup from a bottle onto T.M.C. T.M.C. then went into the bathroom to take a shower in order to rinse off the chocolate syrup. While she was taking a shower, Appellant came into the bathroom. T.M.C. testified that Appellant whipped open the shower curtain, she kneeled down to cover herself, and Appellant stuck his pointer finger inside her vagina. T.M.C. immediately left the residence . . . . T.M.C. testified that she was sixteen (16) when this incident occurred.

[Appellant] was T.B.'s step-father. T.B. testified that she arrived home from work one night and promptly went to bed. At around

- 2 -

5:00 AM, T.B. awoke to Appellant moving her underwear and placing his finger on her labia. T.B. testified that she was in a state of shock and slid into the corner of her bed to get away from [Appellant. He] then left T.B.'s bedroom without saying anything to her.

[In addition to these allegations,] T.B. testified that Appellant would provide her and T.M.C. with alcohol when they were teenagers.

Rule 1925(a) Opinion, 7/15/20, at 3-7 (internal citations omitted).

In connection with these allegations, Appellant was charged with the aforementioned offenses. In addition to the specific allegations of the victims, their testimony was corroborated in part by Appellant's wife, Ashley Norcross, who reported that she: (1) witnessed Appellant "smack T.M.C. and T.B.'s butt[s];" (2) spoke with T.M.C. by phone on the evening Appellant assaulted her in the shower; and (3) had been told by T.B. about Appellant's early morning assault. *Id*. at 7. The Commonwealth also adduced expert testimony from Janice Wilson regarding, *inter alia*, how perpetrators "establish a relationship with their [minor] victims through grooming." *Id*. at 8. Ms. Wilson testified that "[p]erpetrators will groom the minor victim in order to make it easier to assault them sexually," and noted that "one technique perpetrators use to groom minor victims is to provide them with alcohol." *Id*.

A jury ultimately convicted Appellant and the trial court sentenced him to an aggregate term of thirty to sixty years of incarceration. Appellant did not file a direct appeal. Appellant filed a timely *pro se* petition for relief under the Post-Conviction Relief Act ("PCRA"). After counsel was appointed and in

response to the PCRA court's Pa.R.Crim.P. 907 notice of intent to dismiss without a hearing, Appellant asserted that prior counsel was ineffective for failing to file a direct appeal. On April 28, 2020, the PCRA court reinstated Appellant's direct appellate and post-sentence motion rights due to trial counsel's ineffectiveness in failing to pursue these post-trial prerogatives.

On May 22, 2020, Appellant filed a notice of appeal *nunc pro tunc*. Both Appellant and the trial court have complied with their obligations under Pa.R.A.P. 1925. Appellant has raised the following issues for our consideration:

> 1. Whether the evidence presented was insufficient to support [Appellant's] convictions for sexual abuse, in that the evidence presented was in conflict with the incontrovertible physical facts and contrary to human experience and the laws of nature.
>
> 2. Whether the trial court erred in admitting evidence of the extraneous offense [for] providing alcohol to minors, and denying [Appellant's] motion for mistrial on this basis.

Appellant's brief at 3.

Appellant's first issue implicates the sufficiency of the evidence, over which our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak

and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019).

Additionally, we note that "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006) (internal quotation marks and citation omitted).

Although styled as a sufficiency of the evidence claim, Appellant's arguments are not addressed at the elements of the crimes underlying his convictions but focus upon the credibility of the evidence at trial. *See* Appellant's brief at 15 ("Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law.") (citing *Commonwealth v. Santana*, 333 A.2d 876, 878 (Pa. 1975)). Specifically, Appellant takes issue with a number of minor inconsistencies in the respective testimonies of the victims and expresses incredulity at how the

alleged assaults could have taken place within a "14 x 70 foot trailer" where several people were living at the time. ***Id***. at 16-21.

"[A] review of the sufficiency of the evidence does not include an assessment of the credibility of the testimony; such a claim goes to the weight of the evidence." ***Commonwealth v. Gibbs***, 981 A.2d 274, 281-82 (Pa.Super. 2009). To the extent that Appellant intended to raise a claim challenging the weight of the Commonwealth's evidence, there is no indication in the certified record that Appellant ever preserved such an issue for our review.[1] As such, any challenge to the weight of the evidence is waived. ***See Commonwealth v. Rivera***, 238 A.3d 482, 497 (Pa.Super. 2020) ("[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. . . . Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.").

With respect to any arguable challenge to the sufficiency of the evidence that can be extrapolated from Appellant's discussion, we hereby adopt the thorough sufficiency analysis contained in the trial court's Rule 1925(a) opinion. The trial court's assessment contains exhaustive citations to the trial

---

[1] The same day that he was convicted, Appellant filed a motion for judgment of acquittal pursuant to Pa.R.Crim.P. 606(A)(2) ("Challenges to Sufficiency of Evidence"). This filing did not contain any preservation of a claim sounding in weight of the evidence. Even though Appellant's post-sentence rights were reinstated by the PCRA court, he ultimately did not file any post-sentence motions for relief. Rather, Appellant immediately filed a notice of appeal.

transcripts and authoritatively documents the allegations of the victims presented at trial. **See** Trial Court Opinion, 7/15/20, at 11-25. No relief is due on Appellant's putative sufficiency claim.

Appellant's second issue concerns the admissibility of evidence. We note that "[t]he admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." **Commonwealth v. Hernandez**, 39 A.3d 406, 411 (Pa.Super. 2012). In this context, "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Id**.

Under Pennsylvania law, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). As a general rule, all relevant evidence is admissible and all irrelevant evidence is inadmissible. Pa.R.E. 402. However, even relevant evidence may be excluded if its probative value is outweighed by the danger of, *inter alia*, unfair prejudice. **See** Pa.R.E. 403.

Specifically, Appellant alleges that the trial court erred by allowing the Commonwealth to admit testimony suggesting that Appellant provided alcohol to the victims in this case. **See** Appellant's brief at 22-25. Overall, Appellant asserts that this evidence was both irrelevant and unfairly prejudicial. We

disagree on both points. As a general matter, we note that evidence of extraneous offenses is not *per se* inadmissible or prejudicial under Pennsylvania law. *See Commonwealth v. Hairston*, 84 A.3d 657, (Pa. 2014) (admitting evidence of defendant's arson-related offenses in murder prosecution to establish intent and consciousness of guilt).

We may immediately and readily dispose of Appellant's arguments concerning relevance. Testifying as an expert, Ms. Wilson confirmed during the Commonwealth's case-in-chief that perpetrators like Appellant sometimes furnish alcohol to minors as part of "grooming" behavior. *See* N.T. Trial, 6/13/18, at 140. As such, we discern no error in the trial court's conclusion that testimony concerning Appellant providing alcohol to the victims was pertinent to the Commonwealth's case and spoke to the likelihood that Appellant was, in fact, grooming these girls for the abuse to which he later subjected them. *Accord* Pa.R.E. 402. More generally, this evidence is also relevant to Appellant's pattern of inappropriate behavior with the victims.

As to prejudice, Appellant argues that the allegations that he "encouraged underage drinking on a regular basis was unfairly prejudicial, and encouraged the jury to evaluate the rest of the evidence in a manner that harmed [Appellant]." Appellant's brief at 25. We disagree.

Overall, Appellant's arguments distort the relative significance of the alcohol-related testimony from the victims. "[E]vidence will not be prohibited merely because it is harmful to the defendant." *Commonwealth v. Page*,

965 A.2d 1212, 1220 (Pa.Super. 2009). Rather, "[e]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than legal propositions relevant to the case." *Id*. Viewed in the aggregate of the Commonwealth's case, the scattered allegations from the victims that Appellant suborned underage drinking are perhaps the least-objectionable of the actions he was accused of at trial. The mere fact that Appellant provided alcohol to minors was not a central focus of the Commonwealth's case, but was simply an ancillary piece of evidence offered to provide a complete picture of his actions. *See Hairston*, *supra* at 666 ("The trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form a part of the history and natural development of the events and offenses for which the defendant is charged.").

Based on this discussion, we discern no abuse of direction in the trial court's conclusion that evidence of Appellant furnishing alcohol to the victims was relevant evidence whose probative value was not outweighed by prejudice. No relief is due on Appellant's second claim for relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/10/2021