J-S17021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JESSE D. TAYLOR | : | |
| | : | |
| Appellant | : | No. 579 EDA 2018 |

Appeal from the Judgment of Sentence January 11, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0002699-2017

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                           **FILED MAY 10, 2019**

Appellant, Jesse D. Taylor, appeals from the judgment of sentence entered on January 11, 2018, following his bench trial conviction for harassment, 18 Pa.C.S.A. § 2709(a)(1).  Upon review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [Appellant] was arrested and charged with simple assault and harassment.  At trial, the Commonwealth presented two police witnesses.  Sergeant [Timothy] Walters responded to [a home on] Walnut Ridge Estates in Lower Pottsgrove, Montgomery County with two other officers to locate a subject who had just left the area.  Sergeant Walters was met at the door of the residence by [E.T.][1] who was approximately 5'11['']  and 135 pounds.  [E.T.] was described by Sergeant Walters as upset, distraught, and scared.  [E.T.] was disheveled, with ruffled clothing, and had redness on her neck and shoulder area.  Sergeant Walters further observed a bump on the back of [E.T.'s] head when [E.T.] moved

---

[1]  We use the victim's initials to protect her identity.

her head to show the Sergeant the area she was complaining about. Inside the residence, a large screen [television] was flipped over, there were splintered wood items in the dining room, and there were broken pottery pieces in the kitchen. Sergeant Walters also noted that the home was unusually dark which Sergeant Walters later discovered was due to the [circuit] breakers in the basement being turned out, not tripped. Eventually, Sergeant Walters came into contact with [Appellant]. [Appellant] admitted that he lived [at the residence in question] and was married to [E.T.]. [Appellant] was several yards from the home when police encountered him. Sergeant Walters was familiar with [Appellant] from prior domestic disturbance calls.

Officer [Matthew] Kemp testified that he responded to the same location as Sergeant Walters and was looking for the male that left the location. [Appellant] was located and told police that his wife "had gotten up in his face and he pushed her away on two separate occasions." [Appellant] had no injuries.

[After the presentation of the Commonwealth's evidence, Appellant moved] for judgment of acquittal on all charges, and [the trial] court granted the judgment of acquittal on simple assault. The motion for judgment of acquittal was denied on harassment. [The trial] court found [Appellant] guilty of summary harassment and sentenced [him] to 60 days of probation plus domestic violence counseling. Post-sentence motions were timely filed and ultimately denied by [the trial] court on January 25, 2018. On February 20, 2018, [Appellant] filed a timely notice of appeal. [Appellant filed a timely court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 26, 2018.]

Trial Court Opinion, 3/26/2018, at 1-2 (superfluous capitalization and record citations omitted).

On appeal, Appellant presents the following issues[2] for our review:

_____

[2] We have reordered the issues for ease of discussion and disposition. Additionally, we note that Appellant presented other issues in his Rule 1925(b) statement, but he does not challenge those issues on appeal. As such, we

> I.  Was Appellant's [c]onstitutional [r]ight to [c]onfrontation denied where the police, the Commonwealth, and [trial c]ourt relied on heard or inferred statements of a complainant who was not present in court and thus could not be cross-examined?
>
> II. Was evidence of the crime of [h]arassment insufficient where the only testimony introduced was that of arresting officers who appeared on the scene after-the-fact and have no direct knowledge of the incident in question, and where Appellant's admission as to physical contact does not support a finding of the requisite intent?

Appellant's Brief at *1 (missing page number).

On the first issue we examine, Appellant argues that the trial court erred by denying his right to confront the victim at trial and allowing the investigating police officer to testify about statements she made to him when he responded to an anonymous 911 telephone call about a possible domestic dispute. *Id.* at 11-14. Solely citing the United States Supreme Court's decision in **Crawford v. Washington**, 541 U.S. 36 (2004), Appellant claims:

> Testimonial statements of witnesses absent from trial can be admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine. [The] collective testimony presented [at trial] implie[d] that a female complainant made various statements to police, accus[ed] the defendant of causing an injury to her head and of fleeing the home. Those implied statements resulted in the investigation, arrest, and the charges that led to [] Appellant's conviction. The prosecution relied on the implied testimony to make the Commonwealth's argument that that [there was a] domestic assault[]. Statements from the complainant were, thus,

---

find them waived. **See Commonwealth v. Hernandez**, 39 A.3d 406, 412 (Pa. Super. 2012) (failure to develop argument with citation to and analysis of relevant authority waives issue on appeal); Pa.R.A.P. 2119(b); Pa.R.A.P. 2101.

incorporated into the trial and the accused should have had the opportunity to cross-examine his accuser.

*Id.* at 13-14 (original brackets, quotations, footnote, and citations omitted).

"Whether a defendant was denied his right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa. Super. 2017) (citation and brackets omitted).

Applicable herein, this Court has summarized the law pertaining to confrontation as such:

> In *Crawford*, the trial court admitted the tape-recorded statement of a wife implicating her husband as the perpetrator in a stabbing. The wife was unavailable at trial because the husband objected to her testimony on marital privilege grounds. Washington state law did not prohibit introduction of the wife's tape-recorded statement so long as it bore adequate indicia of reliability. The Washington Supreme Court ultimately concluded the wife's statement bore sufficient indicia of reliability to warrant its admission at trial. The husband argued the wife's statement violated his rights under the Confrontation Clause, regardless of its admissibility under state law.
>
> The United States Supreme Court held the wife's statement inadmissible under the Confrontation clause. The principle evil at which the Confrontation Clause was directed was the civil-law mode of procedure, and particularly its use of *ex parte* communications as evidence against the accused. Likewise, the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination. The *Crawford* Court found no occasion to offer a comprehensive definition of ["]testimonial.["] Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.

***Commonwealth v. Williams***, 103 A.3d 354, 358–359 (Pa. Super. 2014)

(internal citations and quotations omitted).

The United States Supreme Court, in subsequent decisions, clarified the

scope of "testimonial evidence" as examined in ***Crawford*** as such:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
>
> The Supreme Court confirmed that the protection of the Confrontation Clause attaches only to testimonial hearsay.

***Id.*** at 359 (citation omitted).

> Moreover,

> [t]he existence of an ongoing emergency is important because it indicates that the declarant's purpose in speaking was to help resolve a dangerous situation rather than prove past events. The zone of potential victims and the type of weapon involved inform the inquiry. […D]omestic violence cases[] often have a narrower zone of potential victims.

> \* \* \*

> The medical condition of the victim is important to the primary purpose inquiry to the extent that it sheds light on the ability of the victim to have any purpose at all in responding to police questions and on the likelihood that any purpose formed would necessarily be a testimonial one. The victim's medical state also provides important context for first responders to judge the existence and magnitude of a continuing threat to the victim, themselves, and the public.

***Id.*** at 360–361.

Here, police responded quickly to an emergency telephone call "for a domestic dispute that was occurring" at the subject residence. N.T., 12/26/2017, at 8 and 18. Upon initial contact, the victim appeared "very upset[,] distraught, [and] scared" and was "[s]lightly disheveled." *Id.* at 10. Her clothes were ruffled, she had redness around her neck and shoulder area, and she had a lump on the back of her head. *Id.* at 10-11. Inside the house, a window was broken and covered with cardboard and duct tape. *Id.* at 13. There were fractured pieces of furniture, splintered wood, and broken pottery or dishware covering the floor of the kitchen and a large, flat-screened television was overturned. *Id.* The house was dark, even though it was daytime, and police checked the circuit breaker to find that the electricity had been physically turned off. *Id.* at 14-15. Appellant was not present. *Id.* at 15-16.

Based upon all of the foregoing, we conclude that the victim's statements to police were nontestimonial and made under circumstances objectively indicating that the primary purpose of her exchange with the responding officers was to enable police to meet an ongoing emergency. Police responded close in time to the emergency telephone call. Upon arrival, police witnessed that the victim suffered injuries and was visibly upset, the house where the alleged altercation occurred was dark and disheveled, and Appellant was still at large. As first responders, the officers elicited responses from the victim to judge the existence and magnitude of a continuing threat to her, themselves, and the public. The primary purpose of the questioning

was not to establish or prove past events potentially relevant to later criminal prosecution. Instead, the primary purpose of the challenged exchange was to enable an assessment of the situation and the formulation of a responsive plan. As such, we discern no error in admitting the victim's nontestimonial statements at trial through the testimony of the investigating police officers. Accordingly, Appellant's first issue lacks merit.

Next, Appellant asserts that the evidence at trial was insufficient to sustain his conviction for harassment. Appellant's Brief at 6-11. More specifically, Appellant argues that

> there was no showing of intent. The record shows merely that police responded to a call to find a woman who was distraught and that they witnessed some signs of a home out of order. The evidence does not provide any insight into the exact nature, timing, or cause of the alleged disturbance, nor do the circumstances observed by officers arriving at the scene provide any link to Appellant absent conjecture regarding what the content of the complainant's inadmissible hearsay would be.

*Id.* at 7. Appellant also argues that because the trial court determined that there was insufficient evidence of bodily injury to sustain a conviction for simple assault, the evidence was also insufficient to support his harassment conviction. *Id.* at 7-8. He contends that the only evidence of record regarding any contact between Appellant and the complainant was Appellant's own statement to police that the complainant had "gotten up in his face" and that he "pushed her away twice." *Id.* at 8. Appellant suggests that such evidence "indicates that the intention behind the push[ing] was aimed to create and

preserve personal body space [and] was responsive, as opposed to provocative." **Id.** at 9.

Our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Montanez-Castro**, 198 A.3d 377, 380 (Pa. Super. 2018) (internal citation and original brackets omitted).

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person [] strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" 18 Pa.C.S.A. § 2709(a)(1).

Here, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner as our standard requires, we conclude that there was sufficient evidence to sustain Appellant's conviction for

harassment. Initially, we reject Appellant suggestion that because the trial court determined that there was insufficient evidence of bodily injury to sustain a conviction for simple assault, the evidence was also insufficient to support his harassment conviction. This Court has previously noted that "physical affronts that do not result in 'bodily injury,' and therefore do not constitute a simple assault, would likely be addressable under the summary offense of harassment which specifically includes conduct where the actor 'strikes, shoves, kicks or otherwise subjects him to physical contact.'" **Commonwealth v. Wertelet**, 696 A.2d 206, 211 (Pa. Super. 1997) (citation omitted). In this case, Appellant readily admitted to the police that he shoved the victim twice. As such, there is no dispute that physical contact with the victim occurred as required for harassment. Moreover, Appellant's argument that the evidence showed that he was instinctively reacting to the victim's affront of his personal space, views the evidence in the light most favorable to himself in contravention of our standard of review. The trial court was free to believe all, part, or some of the evidence presented. Aside from Appellant's self-serving statements to the responding officers that he pushed the victim because she was physically menacing him, there was no other record evidence in support of that assertion. Finally, the trial court determined that "[w]hen viewing [Appellant's] statement[s to police] in the context of the injuries on the complainant, the short time period in which the events occurred, and the state of the house when police arrive[d], it is clear that, at a minimum, [Appellant] intended to harass, alarm, or annoy his wife[.]" Trial Court

Opinion, 3/26/2018, at 13. We discern no error or abuse of discretion, as the trial court was permitted to infer Appellant's intent from the circumstantial evidence presented by the Commonwealth. For all of the foregoing reasons, we conclude there was sufficient evidence to support Appellant's conviction for harassment and Appellant's second claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/19